## Case No. 6,632a.

### In re HOLMES et al.

[15 Blatchf. 170; [1] 18 N. B. R. 230.]

Circuit Court, S. D. New York. Aug. 23, 1878.

BANKRUPTCY—COMPOSITION—PRACTICE—RIGHTS OF DEBTOR.

The amount at which the debt due to a creditor was fixed, in composition proceedings, for the purpose of a vote by the creditor, was *held*, under the circumstances of this case, not to have been so fixed as to estop the debtor from questioning the amount on which the percentage of the composition should be calculated, in paying the composition.

[Cited in Wilmot v. Mudge, 103 U. S. 219.]

[In review of the action of the district court of the United States for the Southern district of New York.]

In bankruptcy.

Francis N. Bangs and Melville H. Regensberger, for bankrupts.

Robert D. Benedict, for creditor.

WAITE, Circuit Justice. This is a petition for review, under the supervisory jurisdiction of this court in bankruptcy, and presents the following case: On the 9th of

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

January, 1875, Lazarus Lissberger, one of the partnership firm of Holmes & Lissberger, composed of himself and Samuel Holmes, filed his petition in the district court of this district, for the adjudication of himself and his partnership as bankrupts. In the schedules of the indebtedness of the firm, attached to the petition, a debt due Henry F. Hamill is set forth, in these words: "Henry F. Hamill, about $100,000, open account for goods, wares and merchandise, sold and delivered by said creditor to the firm of Holmes & Lissberger." Upon the filing of this petition, an order was made by the court upon Holmes to show cause, January 16th, 1875, why the prayer should not be granted. No adjudication in bankruptcy has been made, but, March 27th, 1875, while the petition was still pending undisposed of, Holmes & Lissberger applied to the court to call a meeting of their creditors to consider a proposition of compromise, and annexed to this application a statement containing the names of the creditors of Holmes & Lissberger, together with their several addresses. In this statement appeared the name of Hamill. The meeting asked for was duly called and held, April 8th, 1875, and, in accordance with the practice of the court which then prevailed, the deputy clerk of the court presided. The debtors appeared and made their proposition in due form. They also made a statement of their debts and assets, as required by the act of congress [of 1867 (14 Stat. 517)], and were sworn and examined. In this statement the name of Hamill was given as a creditor, but the amount represented as due does not appear in the case as now presented to this court. The meeting, although commenced April 8th, 1875, was not concluded until August 14th. On the 12th of July, William Sinclair appeared as the representative of Hamill, under an appointment as receiver, with authority to collect the debt, and offered a deposition for proof of claim, amounting to $115,-457.02. The debtors objected to the proof, on the ground, among others, that there was no such sum due. July 21st, Sinclair, as receiver, filed with the deputy clerk a communication in writing, whereby he withdrew his request for the record of his vote against the resolution, and asked that it be recorded in favor. He at the same time, withdrew his former deposition for proof, and accompanied his communication with another deposition. In this second deposition, it was stated that the firm was indebted to Hamill in the sum of $112,355.94, the particulars of which were as follows: 1. Eighteen promissory notes of Hamill, payable to the order of Holmes & Lissberger, amounting in the aggregate to $109,929.80, loaned by Hamill to the partners for their accommodation and used by them. 2. Goods sold and delivered at the agreed price of $141,925 51, against which the partners were entitled to credit, 1. For goods, $12,268 61; 2. For promissory

notes made by Holmes & Lissberger, payable to the order of Hamill, amounting, in the aggregate, to $127,230 84, which were loaned by the partners to Hamill for his accommodation and used by him. The balance between the debit items in this statement and the credit items was the amount of the debt actually claimed to be due. Upon the presentation of this proof of debt, the creditors who opposed the composition objected to the claim, upon the ground, among others, that the receiver was not a creditor of the partnership to any amount whatever, and that it appeared on the face of the proof itself, that he held security, the value of which had not been ascertained. Certain creditors further objected that Holmes & Lissberger, as sureties for Hamill on the notes which were primarily his own obligations, were, in the administration of their estate in bankruptcy, entitled to offset their liabilities as sureties against the purchase of iron set out in the proof. Holmes & Lissberger themselves objected to the proof, upon the ground, among others, that the amount for which the proof was made exceeded the sum on which Hamill, or his representatives, would be entitled to a dividend, by at least fifteen per cent., on such part of the accommodation notes of Hamill endorsed by them, as had already been proved, or were provable in the proceeding. On the 22d of July, the deputy clerk declared, that the proof of debt as presented was received subject to the exceptions which had been made. He also further declared, that Sinclair would be entitled to vote on account of the merchandise sold, to the amount of $129,656 90; but, as he had only made proof for a claim to indebtedness of $112,355 94, his vote, when taken, would be considered as taken on that sum. Holmes & Lissberger then objected to this ruling on the additional ground that it did not appear, upon the proof, that Hamill or his representatives had a claim against them for the amount of $112,355 94, and also upon the further ground, that they were not indebted to him in any such amount. Certain of the creditors then asked the deputy clerk to certify to the court the deposition for proof of claim by Sinclair, in connection with the evidence of Holmes taken upon that subject in the composition proceedings, and they objected against the admission of Sinclair to vote upon the compromise. They also objected, that, upon the division of the estate of the firm by the assignee in bankruptcy, no sum of money would be distributed to the receiver, upon a proper adjustment of the accounts, and that Holmes & Lissberger, in the distribution of their own estate, and the payment of their own debts, would not be bound to pay anything. They also objected, that Holmes & Lissberger were not bound to pay Sinclair anything on account of goods sold, so long as they or their estate were left unprotected by him on the outstanding notes. It was conceded, as a matter of fact, that the holders of ten of the notes of Hamill, endorsed by Holmes & Lissberger, amounting, in the aggregate, to $53,635 36, had been admitted as creditors, and the holders of nine of those of Holmes & Lissberger, endorsed by Hamill, amounting, in the aggregate, to $54,046 93, had also been admitted. All these several matters were certified as requested by the creditors, and the court thereupon decided that there was no error in any of the rulings of the deputy clerk. This decision having been reported to the meeting of the creditors, in due course of proceeding, the resolution accepting the composition was passed and signed by the requisite number and value of the creditors. Subsequently, upon the presentation of the resolution, and the statement by the debtors of their assets and debts, to the court, they were duly recorded and filed August 31st. Holmes & Lissberger paid all their creditors the amounts due them respectively, according to the terms of the compromise, except Sinclair. He thereupon, on the 2d of February, 1876, presented his petition to the district court, setting forth, that, after the proposition of compromise had been accepted by the creditors at the meeting called for that purpose, and on the 18th of September, 1875, Holmes, one of the firm, filed in the clerk's office of the court a statement of the assets and debts owing by the firm, in which the claim of Hamill against the firm was set down at $69,980; that he himself signed the compromise to accept fifteen per cent. on the amount due Hamill; that the amount was not stated at the time of obtaining his signature, and he was not then aware of the facts and circumstances connected with the amount due Hamill; that the compromise was accepted and recorded; that the time for payment had passed and no payment or offer of payment has been made to him; that it was within the power of Holmes & Lissberger to have given the exact figures and dates of the amount due from them, as the indebtedness arose out of but two transactions, and, in the month of September, 1874, the amount due had been settled, adjusted and agreed upon, in writing, signed by both Hamill and the firm, at $104,000. The prayer of this petition was for a reference to ascertain the amount due, and for the payment of the compromise percentage thereon, and that the firm might be directed forthwith to pay the percentage upon the amount admitted to be due from them in their petition and statement. March 8th, 1876, a reference was ordered, in accordance with the prayer of the petition, to take proof of the amount due, and report thereon. December 18th, the commissioner, to whom the reference was made, reported, finding due Sinclair, as receiver, $118,258 66. To this report Holmes & Lissberger excepted, on various grounds, but in effect, because their indebtedness was only $14,286 42. Upon the hearing of these

exceptions, the court, being of the opinion, "that the amount of the debt due said William Sinclair was fixed, in the proceedings on the composition offered by said bankrupts, at the sum of $112,355 94, in such wise that it cannot now be questioned by said bankrupts," adjudged that amount to be due, without any inquiry into the objections urged against the report, and directed Holmes & Lissberger to pay into court the compromise percentage thereon, amounting to $16,853 39, with interest from October 1st, 1875. The order of the district court is now here for review, and the single question presented is, whether Holmes & Lissberger are barred by the proceedings in composition, from showing, in this suit, that the amount they actually owed Hamill was less than the amount specified by Sinclair in his proof, and recognized by both the creditors and the court as the voting value of the debt for the purposes of their action when considering the propriety of accepting and confirming the composition.

. The act of congress regulating proceedings in composition is an addition to, and an extension of, the relief granted by the original bankrupt act. It makes no special provision for proof of debts, although it calls largely for the action of creditors. The first thing to be done is for the debtor to ask the court in which his suit in bankruptcy is pending, to call a meeting of his creditors. Notice of the time, place and purpose of such a meeting must be given to all creditors who are known. The creditors assembled upon such a call may resolve to accept the composition offered by their debtor in satisfaction of his debts, but their resolution, to be operative, must be passed by a majority in number, and three-fourths in value, of the creditors present, either in person or by proxy, and confirmed by the signatures thereto of the debtor, and two-thirds in number, and one-half in value, of all the creditors of the debtor. In calculating the requisite majorities, creditors whose debts amount to sums not exceeding fifty dollars are to be reckoned in the majority in value, but not the majority in number; and the value of the debts of secured creditors, above the amount of the security, to be determined by the court, must, as near as circumstances admit, be calculated in the same way. The debtor, unless prevented by sickness, or other cause satisfactory to the meeting, must be present and answer any inquiries that may properly be made of him. He, or some one in his behalf, must produce to the meeting a statement showing the whole of his assets and debts, and the names and addresses of the creditors to whom the debts are respectively due. The resolution, if passed and confirmed, must be presented to the court, together with the statement of the debtor as to his assets and debts, and the court, upon notice to all the creditors of the debtor, and upon hearing, must enquire whether the resolution has been passed in

the manner directed by the act. If satisfied that it has been so passed, and that it is for the best interest of all concerned, the court must cause the resolution to be recorded and the statement of assets and debts to be filed. The composition then becomes binding on all the creditors whose names and addresses and the amounts of the debts due to whom are shown in such statement. Any mistake made inadvertently by a debtor in the statement of his debts may be corrected upon reasonable notice, and with the consent of a general meeting of his creditors.

From this recapitulation of the provisions of the act, it is apparent, that, to some extent, both the creditors and the court must depend upon the debtor for information as to the names of his creditors and the amounts due them respectively. Creditors need not prove their claims in bankruptcy, unless they wish to take some action in the progress of the bankruptcy suit, or share in the distribution of the estate. But, in composition proceedings, the debtor is the moving party. He seeks relief from his debts by the payment to each of his creditors of a part of what he owes them respectively, in satisfaction of the whole. It is optional with a creditor to act or not. If he fails to act, his non-action is equivalent to a positive vote against what the debtor wants, and is to be reckoned as such. But the debtor seeks relief against him as much as against others, and, if the requisite majorities are found to be in favor of accepting and confirming the proposition, he is bound equally with those who have given the affirmative votes, if his name and address and the amount of his debt are included in the statement of the debtor. As soon as the creditors come together under the call of the court, they may require the debtor to present his statement of assets and debts. What both they and the court want to know is: 1. Whether the debtor has offered all he can afford to pay; and, 2. What effect is to be given each vote, in the calculation of the requisite majorities. When the statement is made, each creditor present can tell for himself whether the amount due him is set forth correctly, and, if errors are discovered or suspected, the debtor is there to answer such enquiries as may properly be put to him upon the subject. Should disputes arise between the debtor and particular creditors, or should there be a suspicion of collusion, it would, no doubt, be competent and quite proper for the court to require proof of debts by creditors, in accordance with the provisions of the several bankrupt laws upon that subject. When the evidence of both sides is all in, the representative of the court who presides at the meeting may, if necessary, decide as to its legal effect, but, as the court has supervisory jurisdiction over him, it is always within the power of dissatisfied parties to obtain a review of his rulings. In this way, when disputes of this character arise, the court may be called upon to determine what ought to be

done under the circumstances of the case. Sometimes, it may be necessary to have the amount due definitely settled, either by the agreement of parties or judicial decision, before final action upon the composition is taken; and, at others, it may be sufficient to fix the value of the debt for the purposes of such action as the creditors and the court are required to take in considering the proposition, and leave the parties to their appropriate remedies for ascertaining the amount to be paid if the composition eventually becomes binding. All such matters may properly be left to the judicial discretion of the court. If it seems to be important that the creditors, or the court, should know the exact amount due before taking their final action, an appropriate order to that end may be made, but, if the matter in dispute is not such as materially to affect the result, or it is for the interest of all that the composition should be acted upon before an adjudication of the controversy, as between the parties themselves, can be had, nothing more need be done than to give such directions, for the government of the proceedings, as will protect the parties from harm notwithstanding the existing uncertainty as to the amount that is due.

An assignee in bankruptcy is chosen by the greater part in value and in number of the creditors who have proved their debts. Rev. St. § 5034. In making this choice, questions not unfrequently arise as to the right of a particular creditor to vote, and as to the value a debt is to have in the calculation of the majority. When such questions do arise, they may be referred to the court for settlement; but, I think, it has never been supposed that what was then done would ordinarily preclude either the assignee when chosen, or the bankrupt, or the creditor, from instituting a further enquiry, under the provision of section 5081, into the validity of the claim or the amount due. Proceedings for the choice of an assignee are rarely, if ever, stopped until the merits of a claim are adjudicated upon. It is sufficient if the court fixes its voting value for the time being. Thus, if a creditor whose debt is partially secured proves his unsecured balance, and the bankrupt or the other creditors are not satisfied with the value he puts upon the security, the court need not delay the election until the actual value can be ascertained by a sale, but may estimate the amount, and order the vote to be counted accordingly. So, too, if there are mutual debts, and the balance stated by the creditor in his proof is disputed, the court may fix the value for the matter in hand, and leave the parties to litigate further, if they choose, for the purposes of the distribution of the estate or any subsequent proceedings. The same practice is clearly applicable in cases of composition, and seems to be recognized in that portion of the act which requires the court to determine the value of the debts of secured creditors above their se-

curity, in estimating majorities. Under the general bankrupt law, if a secured creditor seeks to be admitted as a creditor for the balance of his debt over his security, the value of the security may be ascertained by agreement between himself and the assignee, or by a sale in such manner as the court shall direct. The special provision in the composition act was not intended as a substitute for this part of the general act, but to show in what manner the vote of this class of debts was to be estimated in the proceedings preliminary to the composition. The object was not to ascertain, as between the debtor and the creditor, how much was to be paid under the composition, but what influence the particular debt was to have on the deliberations of the creditors or upon the action of the court.

In cases of composition no dividend is paid to creditors. The debtor offers a pro rata payment in proportion to the amount of his unsecured debts. If the offer is accepted, the payment is for the satisfaction of the debts, and not as a dividend from the estate in bankruptcy. When the satisfaction is complete, the debtor is free to dispose of his estate as he will. His creditors, therefore, are not interested in the amount of his debts, except so far as it may affect his ability to pay, or the votes which are to be taken. In regular bankruptcy, however, when the estate of the bankrupt is distributed to the creditors in proportion to the amount of their respective debts, the case is different. There, each creditor is directly interested in the amount due to another, and ample provision is made for a contest in this behalf by the assignee, the creditor or the bankrupt. Rev. St. §§ 4980, 5081. No time is limited for the institution of such a proceeding. The necessary application may be made at any time before the final dividend.

Undoubtedly, all this machinery of the bankrupt law may be used by the court in composition proceedings, for the purpose of obtaining accurate information before deciding to accept or reject the offer of the debtor, but there is nothing in the law which requires it to be done. After the composition has become binding, the court has full power to enforce it, "on motion made, in a summary manner, by any person interested, and on reasonable notice." Under this power, ample opportunity is afforded for the settlement of all controversies between the debtor and his individual creditors. If the other creditors and the court are fully informed of the fact that there is a dispute between the debtor and his creditor as to the amount that is actually owing, and of the claims of the respective parties, before their final action is taken, which gives effect to the composition, they cannot complain if, when called upon to pay, the debtor insists upon what he claimed, while they were acting, were his rights in the premises.

This is not a proceeding to set aside a composition, but to enforce it; not to determine

whether this composition is binding upon this particular creditor because the amount due him was not correctly set forth in the debtors' statement produced at the meeting of the creditors; but to require the debtors to pay what they have offered. The question presented is not as to the effect of an error by the debtor, in his statement of debts, upon the validity of the composition, but, whether the debtor, when his statement is disputed by the creditor at the time, and a larger amount claimed as due, may resist the claim of the creditor, upon the motion of that creditor to have the composition carried into effect.

The language of the offer in this case, as accepted, was, "to pay our several creditors the sum of fifteen cents, in money, on every dollar owed by us to our creditors, without any interest calculated upon the principal sum of our indebtedness." If this were all, it is clear, that, in this action, the first thing for the court would be to settle the dispute between these parties as to the amount of the debt. The offer was to pay a percentage upon what was owing, and, in this case, that amount was not stated. This makes it necessary to enquire whether what was done at the meeting of the creditors and by the court has the effect of a judicial determination of the controversy. All that appears upon this subject, in the record, is, that the debtors, in their statements, reported a debt owing to Hamill, but, from what is said in the argument of their counsel here, it may fairly be inferred, that they were uncertain as to its amount. Sinclair appeared for Hamill at the meeting of the creditors, and offered a deposition to prove the amount. His claim, as stated in the proof, was disputed by the debtors and some of the creditors. They insisted that nothing was due, or, if anything, not so much as he demanded. The proof of debt was "received subject to exceptions," and, after the evidence of one of the debtors was taken, the officer presiding at the meeting ruled that Sinclair was entitled to vote, and that his vote, when taken, would be considered as taken upon $112,355 94. Upon the reference of the proof of claim and the evidence of the debtor to the court, the ruling of the presiding officer was confirmed. This is all that transpired upon this subject previous to the adoption of the resolution of acceptance at the first meeting of the creditors, save that the debtors always contended that they did not owe as much as Sinclair claimed. When Sinclair signed the resolution of acceptance for the purposes of its confirmation, as required by the law, the amount due him was not stated, and there is nothing to show that this omission was ever supplied. As this instrument was to be signed by both the debtors and the approving creditors, it is not improbable that the amount was purposely withheld, because the debtors were unwilling to commit themselves to the amount as claimed by Sinclair, and he was unwilling to bind himself in that way to accept the composition

percentage upon anything less. From all this it seems to me clear, that neither the parties nor the court understood that any other question was submitted for judicial determination than the value which should be given the debt by the creditors and the court, when considering the propriety of accepting or confirming the composition. The debtors evidently so understood it, because they did not ask the court to pass upon the ruling of the presiding officer. They contented themselves with their exception upon the record, thus indicating their unwillingness to be bound for the payment of their proposed percentage upon the amount claimed, but consenting that the meeting should proceed with its business, under the ruling as made, without further opposition, so far as they were concerned. Sinclair, also, must have so understood it, for, when he called upon the court to enforce the composition in his favor, he did not ask for the percentage upon the amount for which his vote was taken, but prayed for an account of the amount actually his due, and the payment of the sum he was entitled to, calculated upon that basis. The other creditors, as has been seen, are not interested, because, notwithstanding they were fully advised as to the controversy in respect to this particular debt, they voted to accept the proposition and affixed their confirmatory signatures. The court, too, cannot have been misled, because, when called upon to cause the resolution of acceptance to be recorded, the amount due Hamill was left blank in the instrument containing the signatures of those who confirmed the resolution, although Sinclair, his representative, appeared as one of the signers. From this it may fairly be inferred, that the resolution was passed and confirmed without the vote of Sinclair, and that, so far as the other creditors were concerned, it was immaterial whether the amount due upon this debt was definitively settled or not.

If, instead of taking the vote of Sinclair, and counting it at the value he put upon his claim, it had been counted, under a similar order of the court and against his protest, at the amount fixed by the debtors, I cannot believe it would be seriously contended that he was bound to accept, in satisfaction of his debt, the percentage upon the amount thus treated as due. But, if the creditor is not bound, neither is the debtor. A judgment, or that which is the equivalent of a judgment, binds all the parties or none.

Upon the whole, I am clearly of the opinion that the action of the court during the progress of the composition proceedings was not an adjudication of this debt as between the debtors and the creditor, but only an estimate of the amount at which the debt was to be reckoned in calculating the majorities under the law.

The order of the district court, fixing the amount due at $112,355 94, without enquiry into the objections urged by Holmes & Lissberger, is reversed. No other questions are

decided. I have not enquired into the merits of the case. Neither have I considered the effect of anything that may have been contained in the statements presented by the debtors to the meeting of creditors or to the court. I only decide that the amount claimed by Sinclair in his proof of debt, although accepted by the creditors and the court as the true amount due for the purposes of their action, does not conclude the debtors, and that, in this action, they may show, if they can, that it exceeds what they actually owe, and upon which alone they are bound to make payment under the composition. The costs in this court must be paid by Sinclair, the receiver.

[Certain exceptions to the report of the commissioner were overruled in 2 Fed. 153, and upon petition of review this decision was affirmed by the circuit court. 7 Fed. 584.]